CENTER FOR DISABILITY ACCESS
Russell Handy, Esq., SBN 195058
Phyl Grace, Esq., SBN 171771
Ray Ballister Jr., Esq., SBN 111282
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **James Close**,<br><br>Plaintiff,<br><br>v.<br><br>**Birdwell California! LLC,** a California Limited Liability Company; and Does 1-10,<br><br>Defendants. | **Case No.**<br><br>**Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff James Close complains of Defendants Birdwell California! LLC, a California Limited Liability Company; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a blind person who requires screen-reading software to read website content using his computer and to interact with mobile applications on his iPhone.
2. Defendant Birdwell California! LLC ("Birdwell") is a California Limited Liability Company.

3. Birdwell is business open to the public; a retailer that sells clothing. It operates a physical store in Orange County California.

**JURISDICTION & VENUE:**

4. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.
5. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of events, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.
6. This Court has personal jurisdiction over Birdwell because it conducts and continues to conduct a substantial and significant amount of business in the State of California.
7. Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391(b)(1) because Birdwell resides in this District.

**BACKGROUND STATEMENT:**

8. The Internet, most notably the sites of the Web, plays a critical role in the daily personal, professional, civic, and business life of Americans. Increasingly, businesses are providing goods and services to the public through Web sites.
9. Millions of persons, like the plaintiff, have disabilities that affect their use of the Web. These individuals use assistive technology to enable them to navigate websites or access information contained on those sites.
10. Unfortunately, many Web sites of public accommodations render use by individuals with disabilities difficult or impossible due to barriers posed

by Web sites designed without accessible features. Individuals who are blind or have low vision often confront significant barriers to Web access. This is because many websites provide information visually without features that allow screen readers or other assistive technology to retrieve information on the site so it can be presented in an accessible manner. The most common barrier to website accessibility is an image or photograph without corresponding text describing the image. A screen reader or similar assistive technology cannot "read" an image, leaving individuals who are blind with no way of independently knowing what information the image conveys (e.g., a simple graphic or a link to another page). Similarly, complex websites often lack navigational headings or links that would facilitate navigation using a screen reader or may contain tables with header and row identifiers that display data, but fail to provide associated cells for each header and row so that the table information can be interpreted by a screen reader.

11. Online forms, which are an essential part of accessing goods and services on many websites, are often inaccessible to individuals with disabilities. For example, field elements on forms—the empty boxes that hold specific pieces of information, such as a last name or telephone number—that lack clear labels, and visual CAPTCHAs ("Completely Automated Public Turing Test To Tell Computers and Humans Apart")—distorted text that must be inputted by a website user to verify that a Web submission is being completed by a human rather than a computer—make it difficult for persons using screen readers to make purchases, submit donations, and otherwise interact with a website. These barriers greatly impede the ability of individuals with disabilities to fully enjoy the goods, services, and programs offered by covered entities on the Web.

12. Being unable to access Web sites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information. On the economic front, electronic commerce, or "e-commerce," often offers consumers a wider selection and lower prices than traditional, "brick-and-mortar" storefronts, with the added convenience of not having to leave one's home to obtain goods and services. For individuals with disabilities who experience barriers to their ability to travel or to leave their homes, the Internet may be their only way to access certain goods and services.

13. The ADA's promise to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American economic life will be achieved in today's technologically advanced society only if it is clear to businesses and other public accommodations that their Web sites must be accessible.

**SUMMARY OF RELEVANT LAW**

14. Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182(a).

15. Title III of the ADA and its corresponding regulations define a "place of public accommodation" as a facility whose operations affect commerce and that falls within at least one of the 12 categories, including clothing stores. 42 U.S.C. § 12187(e).

16. A place of public accommodation must provide auxiliary aids and

services – such as audible recordings, screen reader software, and accessible electronic and information technology -- where necessary to ensure that a person with a disability can participate in the services, privileges and advantages enjoyed by non-disabled customers unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the service, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii) 28 C.F.R. § 36.303(a) & (b)(2).

17. With respect to the Web, there are a number of commonly seen problems that create impediments to persons with vision impairments from using the websites.

18. Text alternatives are a major component of an accessible website. A text alternative is text that is used in place of non-text content for those who cannot view the non-text content. Non-text content includes such things as pictures, charts, applets, audio files, etc. People who cannot see for example would not be able to see information presented in a picture or chart. A text alternative is therefore provided that allows the user to be able to convert the information (the text) into speech.

19. In order for people with disabilities to be able to use this text - the text must be "programmatically determinable." This means that the text must be able to be read and used by the assistive technologies (and the accessibility features in browsers) that people with disabilities use. It must also be possible for people using assistive technologies to find these text alternatives when they encounter non-text content that they cannot use. To accomplish this, the text must be "programmatically associated" with the non-text content. This means that the user must be able to use their assistive technology to find the alternative text (that they can use) when they land on the non-text content (that they can't use).

20. There are numerous standards widely recognized and used by professional website architects to ensure website accessibility to persons who are blind. For example, the Web Accessibility Initiative (WAI) of the World Wide Web Consortium (W3C[supreg]) has created recognized international guidelines for Web accessibility. These guidelines, set out in the Web Content Accessibility Guidelines (WCAG), detail how to make Web content accessible to individuals with disabilities. The most recent and updated version of the WCAG, the WCAG 2.0, was published in December 2008. The WCAG 2.0 contains 12 guidelines addressing Web accessibility. Each guideline contains testable criteria for objectively determining if Web content satisfies the guideline.
21. Standards for Web site accessibility also exist for Federal government agencies, which are required to make their Web sites accessible under section 508 of the Rehabilitation Act of 1973, 29 U.S.C. 794(d) (section 508). Specifically, the Web sites of Federal government agencies must comply with the Electronic and Information Technology Accessibility Standards (section 508 standards) published by the U.S. Access Board, 36 CFR 1194, available at http://www.access-board.gov/sec508/standards.htm. The Access Board has recently revised its section 508 standards to harmonize with WCAG 2.0, which the Access Board calls "a globally-recognized and technologically-neutral set of accessibility guidelines for Web content."
22. By applying these standards, a business can ensure that its website is accessible to and useable by persons with disabilities.

**FACTUAL ALLEGATIONS**

23. Birdwell is a place of public accommodation.
24. One of the services, privileges or advantages offered by Birdwell to its

customers is the use of a website that provides information about the products carried by Birdwell and proffered for sale both on the Web and in its physical store.

25. Birdwell has failed to build and/or modify its public website to ensure that it constitutes accessible electronic and information technology and so that persons with disabilities can participate in and enjoy full and equal use of it.

26. James Close, who uses screen reading software, attempted to use Birdwell's website in March of 2017 to find information about its products and discovered that he could not successfully navigate around the Birdwell website because the website failed to provide basic accessibility features.

27. Based on this experience and an assessment of the website, Mr. Close alleges on information and belief that the following web-site access impediments existed at the time of his experience and currently:

   a. **Missing ALT Attributes.** It is a recognized accessibility standard that non-text content that is presented to the user must have a text alternative that serves the equivalent purpose (with limited exceptions). On the Birdwell website, however, there is at least one instance where website images lack an ALT attribute and, therefore, blind persons cannot ascertain information about the image.

   b. **Invalid Hypertext Reference**. It is a recognized accessibility standard that For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items

is available to user agents, including assistive technologies. On the Birdwell website, however, there are at least two instances where links use invalid hypertext references and at least three instances where an event handler was bound to a non-actionable element that lacks a role and, therefore, blind persons cannot effectively understand or use the links and elements.

c. **Links Missing Text Inside (or Uninformative)**. It is a recognized accessibility standard that when links are used on websites, the purpose of the link can be determined from the link *text* alone or from the link text together with its programmatically determined link context, except where the purpose of the link would be ambiguous to users in general. On the Birdwell website, however, there are at least ten instances where links have no associated text and, therefore, blind persons cannot effectively understand or use the links. In another instance there is text but it is not informative. Finally, there is at least one instance where the text attribute is the same as the text inside the link.

d. **Lack of Title Attributes**. It is a recognized accessibility standard that for all titles, which help users navigate, find content, and determine where they are on the website, title attributes must be present. On the Birdwell website, however, there are at least three instances where text attributes are missing. As a result, blind persons cannot effectively understand or use the links and elements.

e. **IDs Being Used More Than Once**. It is a recognized accessibility standard that in content implemented using markup languages, elements have complete start and end tags, elements are nested according to their specifications, elements do not

contain duplicate attributes, and any IDs are unique, except where the specifications allow these features. On the Birdwell website, however, there are at least six instances where particular "IDs" are used more than once in violation of this standard and, therefore, blind persons cannot effectively understand or use those elements.

28. Removing or fixing the violations identified above can be done by entry to mid-level personnel trained in writing code, would be inexpensive and would not fundamentally alter the nature of the services, privileges, advantages or accommodations offered by Birdwell.

29. Removing these and other website barriers is neither difficult nor especially costly and can be done by entry to mid-level personnel trained in writing code and would not fundamentally alter the nature of the services, privileges, advantages or accommodations offered by Birdwell.

30. Providing accessibility will not result in significant changes to the format or appearance of a site. The addition of invisible attributes known as alt (alternate) text or tags to an image will help keep an individual using a screen reader oriented and allow him or her to gain access to the information on the website. Associating form labels to form input fields and locating form labels adjacent to form input fields will allow an individual using a screen reader to access the information and form elements necessary to complete and submit a form on the website. Moreover, Web designers can easily add headings, which facilitate page navigation using a screen reader, to their Web pages. They can also add cues to ensure the proper functioning of keyboard commands and set up their programs to respond to assistive technology, such as voice recognition technology.

31. Mr. Close suffered difficulty and discomfort in his encounter with the

inaccessible Birdwell website.

32. Plaintiff is and has been deterred from using the Birdwell website because of his knowledge of the inaccessible website elements that exist. When the Birdwell website is made accessible to persons with visions impairments, Mr. Close will return and patronize this place of public accommodation.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

33. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

34. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a).

35. Under the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

36. Under the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

37. Under the Ada, it is an act of discrimination to fail to take such steps as

may be necessary to ensure that no individual with a disability is excluded, denied services, treated differently than other individuals or to fail to provide effective communication because of the absence of auxiliary aids and services – including screen reading software and accessible electronic and information technology – unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C.A. § 12182(b)(2)(A)(iii); 28 CFR 36.303(b)(2); 28 CFR 36.303(c)(1).

38. Here, Birdwell's failure to provide an accessible website violates the ADA.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

39. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

40. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. *See* Cal. Civ. Code § 51(f), 52(a).)

41. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. *See* Cal. Civ. Code § 55.56(a)-(c).

**PRAYER:**

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.
2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.
3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: April 21, 2017

CENTER FOR DISABILITY ACCESS

By: ______________________________
Russell Handy, Esq.
Attorney for plaintiff